LEXSEE 583 FSUPP 297

**WILLIAM PETRARCA v. STATE OF RHODE ISLAND, et al.**

**C.A. No. 83-0043 P**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

*583 F. Supp. 297; 1984 U.S. Dist. LEXIS 18342*

**March 23, 1984**

**COUNSEL:** [**1]

William Petrarca, Pro Se. Cranston, Rhode Island.

George M. Cappello, Esq., Rhode Island Dept. of Corrections, Cranston, Rhode Island.

**OPINION BY:**

PETTINE

**OPINION:**

[*297] MEMORANDUM AND ORDER

This case presents the question of whether the Rhode Island parole statutes create a cognizable liberty interest in parole release.

The plaintiff is an inmate at the Adult Correctional Institutions in Cranston, Rhode Island. He is currently serving a twenty year sentence following a plea of guilty to second degree murder. The Rhode Island Parole Board (Board) has consistently denied him release on parole because of the heinous nature of the crime he committed. Alleging various due process violations in the Board's consideration of his parole petitions, Petrarca filed this suit under *42 U.S.C. § 1983* for declaratory and injunctive relief. The case is currently before this Court to review a magistrate's recommendation that the case be dismissed.

The magistrate's opinion appears to be based on two grounds. First, the magistrate stated that,

> [a] prisoner challenging either the decision of the parole board or the process by which that decision was made must show that the action of [**2] the board was so unlawful as to make his custody in violation of the laws of the United States. I find that the plaintiff has failed to meet the burden of such a showing in this matter.

Second, quoting the statement in *Johnson v. Wells, 566 F.2d 1016, 1018 (5th Cir. 1978)*, that the expectancy of release on parole in Texas is not a constitutionally protected liberty or property interest, the magistrate found "that this action is not based upon the violation of any federally protected right." The Court will address the liberty interest question first.

[*298] The Rhode Island Supreme Court recognized that a prisoner is entitled to some due process protections in parole release hearings in *State v. Ouimette, 117 R.I. 361, 367 A.2d 704 (1976)*. However, although that opinion relies heavily on federal cases interpreting federal law, it does not specify whether its conclusion is based on concepts of due process stemming from the United States Constitution, the Rhode Island Constitution or both. Additionally, in the more recent case of *Lerner v. Gill, 463 A.2d 1352 (R.I. 1983)*, the Rhode Island Supreme Court analyzed the same statute it had in *Ouimette*, n1 but [**3] seemed less disposed to find that it created any due process rights:

> In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)*, the Supreme Court, in considering a Nebraska statute that was considerably more restrictive than § 13-8-14, rejected a prisoner's contention that the language of the statute created a "protectible expectation of parole," pointing out that the existence of a mere statutory expectation did not mandate repeated adversary hearings

Appendix (V)

> in order to continue a convict's confinement. *Id. at 14, 99 S. Ct. at 2107, 60 L. Ed. 2d at 679-80.* Our statute creates no greater expectation of liberty than its Nebraska counterpart. Thus, we find that Lerner had no protectable entitlement to parole.
>
> *463 A.2d at 1365.*

However, since the statute analyzed in these decisions is no longer in effect, *see* note 1 *supra*, and since there has been an addition to the parole release scheme, *R.I.Gen.Laws § 13-8-14.1* (enacted 1982), this Court must undertake an independent analysis of whether the Rhode Island parole statutes created a liberty interest in parole at various times. *Cf. Greenholtz* [**4] *v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 12, 99 S. Ct. 2100, 2106, 60 L. Ed. 2d 668 (1979)* ("whether any other state statute [than Nebraska's] provides a protectible entitlement must be decided on a case-by-case basis.").

n1 In *Ouimette*, the Rhode Island Supreme Court analyzed R.I. Gen.Laws of 1956 (1969 Reenactment) § 13-8-14, which stated:

> Disposition of prisoner to reform-Assurance of employment or support. -- A permit shall not be issued to any prisoner under the authority of § § 13-8-9 to 13-8-13, inclusive, unless it shall appear to the board:
>
> a. That such prisoner is deserving of such permit by reason of his good conduct while imprisoned, and that such prisoner has shown a disposition to reform.
>
> b. That such prisoner will be able to secure employment as soon as he is at liberty upon parole, or is otherwise provided for so that he will not become dependent upon public charity.

In *Lerner*, the Rhode Island Supreme Court apparently construed this same version of § 13-8-14 which it cited as "G.L. 1956 (1969 Reenactment) § 13-8-14" and which it characterized as stating

> that a prisoner would not be paroled unless it appeared to the board that (1) the prisoner was deserving of such parole because of his good conduct while in prison and that such prisoner had shown a disposition to reform and (2) the prisoner would be able to secure employment upon parole and thus not become a public charge.
> *463 A.2d at 1365.*

The court in *Lerner*, unfortunately, stated that this version of § 13-8-14 was in effect in the spring of 1979, *see 463 A.2d at 1365;* however, it appears that the version in effect in the spring of 1979 was that one which had been enacted on June 2, 1976:

> PAROLE RELEASE CRITERIA. -- A permit shall not be issued to any prisoner under the authority of 13-8-9 to 13-8-13 inclusive unless it shall appear to the board:
>
> (a) That the prisoner has substantially observed the rules of the institution in which confined;
>
> (b) That release would not depreciate the seriousness of his offense or promote disrespect for law, and;
>
> (c) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law . . . .
>
> 1976 R.I.Pub.Laws ch. 223.

This section was subsequently amended to the current § 13-8-14 by 1980 R.I.Pub. Laws ch. 292.

[**5]

Although the Rhode Island Supreme Court correctly characterized *Greenholtz* as not recognizing a right to a formal parole hearing for every Nebraska inmate, the United States Supreme Court did find that the statute

there created a liberty interest in parole release: "We can accept [*299] respondents' view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection." *442 U.S. at 12, 99 S. Ct. at 2106. See* Note, Violations of the Double Jeopardy Prohibition under the Federal Parole Release System, *63 B.U.L.Rev. 673, 705 (1983)* (interpreting *Greenholtz*). Therefore this Court will compare the Rhode Island parole scheme at various times to the one in *Greenholtz* in which the United States Supreme Court found a constitutionally protected liberty interest.

The Nebraska statute stated:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, *it shall order his release unless* it is of the opinion that his release should be deferred because:
>
> (a) There is a substantial risk that he will not conform to the conditions of parole;
>
> (b) His release would depreciate [**6] the seriousness of his crime or promote disrespect for law;
>
> (c) His release would have a substantially adverse effect on institutional discipline; or
>
> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date. Neb. Rev. Stat. § 83-1, 114(1) (1976) (emphasis added).

In addition, the statute required the Nebraska parole board to take into account fifteen other factors. Fourteen of these were specific while one, "any other factor[] the board determines to be relevant," served as a catchall provision. Neb.Rev.Stat. § 83-1, 114(2) (1976). n2 The Court accepted the prisoners' view

> that the structure of the provision together with the use of the word "shall" binds the Board of Parole to release an inmate unless any one of the four specifically designated reasons are found. In their view, the statute creates a presumption that parole release will be granted, and that this in turn creates a legitimate expectation of release absent the requisite finding that one of the justifications for deferral exists.

*Greenholtz, supra* [**7] , *at 11-12, 99 S. Ct. at 2106* (Court describing prisoners' argument).

n2 The fifteen factors in the Nebraska statute were:

> (a) The offender's personality, including his maturity, stability, sense of responsibility and any apparent development in his personality which may promote or hinder his conformity to law;
> (b) The adequacy of the offender's parole plan;
> (c) The offender's ability and readiness to assume obligations and undertake responsibilities;
> (d) The offender's intelligence and training;
> (e) The offender's family status and whether he has relatives who display an interest in him or whether he has other close and constructive associations in the community;
> (f) The offender's employment history, his occupational skills, and the stability of his past employment;
> (g) The type of residence, neighborhood or community in which the offender plans to live;
> (h) The offender's past use of narcotics, or past habitual and excessive use of alcohol;
> (i) The offender's mental or physical makeup, including any disability or handicap which may affect his conformity to law;
> (j) The offender's prior criminal record, including the nature and circumstances, recency and frequency of previous offenses;
> (k) The offender's attitude toward law and authority;

> (*l*) The offender's conduct in the facility, including particularly whether he has taken advantage of the opportunities for self-improvement, whether he has been punished for misconduct within six months prior to his hearing or reconsideration for parole release, whether any reductions of term have been forfeited, and whether such reductions have been restored at the time of hearing or reconsideration;
> (m) The offender's behavior and attitude during any previous experience of probation or parole and the recency of such experience; and
> (n) Any other factors the board determines to be relevant.
> Neb.Rev.Stat. § 83-1,114(2) (1976).

[**8]

Before the enactment of *R.I.G.L. § 13-8-14.1* in 1982, the criteria to determine whether a prisoner eligible for parole [*300] should be granted parole, were set forth exclusively in § 13-8-14. From June 2, 1976, to May 15, 1980, § 13-8-14 stated, in relevant part:

> PAROLE RELEASE CRITERIA. -- A permit *shall not* be issued to any prisoner under the authority of 13-8-9 to 13-8-13 inclusive *unless* it shall appear to the board:
>
> (a) That the prisoner has substantially observed the rules of the institution in which confined;
>
> (b) That release would not depreciate the seriousness of his offense or promote disrespect for law, and;
>
> (c) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law.
>
> 1976 R.I.Pub.Laws ch. 223 (amended by 1980 R.I.Pub.Laws ch. 292) (emphasis added).

The 1980 amendment to the section changed it to its present form:

> A permit *shall not* be issued to any prisoner under the authority of § § 13-8-9 to 13-8-13 inclusive *unless* it shall appear to the board:
>
> (a) That the prisoner has substantially observed the rules of the institution in which confined as [**9] evidenced by reports submitted to the parole board by the director of the department of corrections, or his designated representatives in a form to be prescribed by the director;
>
> (b) That release would not depreciate the seriousness of his offense or promote disrespect for law;
>
> (c) That there is a reasonable probability that the prisoner, if released, would live and remain at liberty without violating the law; and
>
> (d) That the prisoner can properly assume a role in the city or town in which he is to reside. In assessing his role in the community the board shall consider,
>
> (1) whether or not the prisoner has employment
>
> (2) the location of his residence and place of employment
>
> (3) the needs of the prisoner for special services, including but not limited to, specialized medical care and rehabilitative services. . . .
>
> *R.I.Gen.Laws § 13-8-14* (1981 Reenactment) (emphasis added).

Neither of these statutes contain the mandatory language or statutory structure which created an expectancy of release in *Greenholtz*. Sections 13-8-9 through 13-8-13, to which both of these versions of § 13-8-14 refer, merely establish minimum periods of time after which a prisoner "may" be considered [**10] for parole release. By its use of "shall not"/"unless" language in these versions of § 13-8-14, the legislature has modified only the Board's discretion to release a prisoner before these criteria are met -- it has not modified the Board's discretion to keep a convict in prison for any amount of time, up to his maximum sentence, after he has met these criteria. He therefore has no meaningful expectation of parole release at any given time.

However, the enactment of *R.I.Gen.Laws § 13-8-14.1* did put a cognizable liberty interest in the Rhode Island scheme. Section 13-8-14.1 states:

> Parole standards. -- At least once each calendar year commencing on January 1, 1983, the parole board *shall adopt* standards to be utilized by the said board in evaluating applications for parole of persons convicted of a criminal offense and sentenced to the adult correctional institutions. Said standards *shall establish*, with the range of parole eligibility set by statute, the portion of a sentence which *should* be served upon conviction for each category of criminal offense prior to parole, and *shall serve* as guidelines for the board in making individual parole determinations. [**11] The board *shall consider* the applicable standard prior to rendering a decision on a parole application, *and may make a determination at variance with that standard only upon a finding that such determination is warranted by individualized factors such as the character and criminal [illegible] record of the applicant, the nature and circumstances of the offense [illegible] for which the applicant was sentenced, the conduct of the applicant [illegible] incarcerated, and the criteria set [illegible] 13-8-14.* In each case where the [illegible] grants an application prior to the time set by the applicable standard or denies an application on or after the time set by that standard, the board shall set forth in writing the rationale for its determination.
>
> *Id.* (inserted by 1982 R.I.Pub.Laws ch. 375 § 10) (emphasis added).

*R.I.Gen.Laws § 13-8-14.1* limits the great discretion conferred on the Parole Board by the earlier statutes. Although the Board is able to set its own guidelines, it is also required to follow them. Although the "such as" language of the third sentence appears to allow the board to consider factors other than those specifically enumerated in either § 13-8-14.1 [**12] or § 13-8-14, this language vests the board with no more discretion, and probably less, to consider other criteria than that conferred on the Nebraska parole board by the "catch all" provision of the Nebraska statute. Moreover, the mandatory language of § 13-8-14.1 combined with the requirement of written guidelines (which was not present in the Nebraska scheme) make the present Rhode Island scheme resemble the federal one. *See 18 U.S.C. § 4206.* The Courts of Appeals for the Seventh and Eighth Circuits, the United States District Court for the District of Colorado, and one commentator have all found that the federal scheme created a liberty interest, *Solomon v. Elsea, 676 F.2d 282, 285 (7th Cir. 1982); Evans v. Dillahunty, 662 F.2d 522, 526 (8th Cir. 1981); Castaldo v. United States Parole Commission, 554 F. Supp. 985, 986 (D.Colo. 1983);* Note, Violations of the Double Jeopardy Prohibition under the Federal Parole Release System, *63 B.U.L.Rev. 673, 706-08 (1983).* Therefore, the magistrate erred in concluding that parole did not give rise to a liberty interest without comparing the statutes in effect at different times to the statute in *Greenholtz*. Some parole [**13] statutes do create cognizable liberty interests in parole.

The Court therefore turns to the magistrate's conclusion that the petitioner has not shown "that the action of the board was so unlawful as to make his custody in violation of the laws of the United States." None of the due process violations which the petitioner alleges occurred after January 1, 1983 -- the effective date of § 13-8-14.1. Since none of the statutes in effect before § 13-8-14.1 created a cognizable liberty interest under the federal Constitution, n3 the only question remaining is whether *Ouimette* has any remaining effect cognizable under the federal Constitution.

> n3 By analyzing this case in terms of whatever parole provision was in effect at a certain time, the Court does not mean to imply that these laws may always be changed with retroactive effect. The Court recognizes that, in some instances, the retroactive application of parole laws might violate the ex post facto clause of the federal Constitution. *See* Note, Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation, *62 B.U.L.Rev. 515 (1982).* This question, however, is not an issue in this case.

[**14]

*Ouimette* may have been totally overruled sub silentio by *Lerner*. *See supra.* Nevertheless, *Lerner* explicitly found no liberty interest in the statute analyzed in *Ouimette*. Moreover, this Court has found that no Rhode Island parole statute at issue in this case existing before the enactment of § 13-8-14.1 created a cognizable liberty interest under the federal Constitution. Any right to specificity in the statement of reasons for denial of parole under the statutes existing before § 13-8-14.1 would

have to be based in state law. Therefore, since any right under *Ouimette* in this case would only be based on state law, and since *Ouimette* may have been overruled sub silentio in *Lerner*, the magistrate was correct in concluding that Petrarca has not alleged a viol[redacted] This conclusion on the basis of this complaint, however, should [*302] not be seen to derogate the fact that [redacted]

n4 The court notes that even if it had found that *Ouimette* provided a correct standard in this case, the reasons given the plaintiff may have been sufficient under *Ouimette*.

[**15]

Therefore, the Court adopts the magistrate's recommendation, although not his reasoning, and hereby orders that the case be DISMISSED.